Hillsborough,
May 3, 1932.

MARGARET J. CASHMAN, *Ex'x, v.* ERNEST DUMAINE & *a.*

*Thorp & Branch,* for the plaintiff.

*Albert Terrien,* for the defendants.

SNOW, J. The rulings of the referee and the order of judgment appear to have been based upon a misconception of the nature of contracts of letting, or upon a failure to appreciate the limited scope of our statute providing for their summary termination.

The lease here was a tenancy at will from month to month. Such a tenure is an entire and continuing contract. At common law, it could not be determined by either party against the will of the other

without the required notice to quit. "The tenancy continues, whatever either party alone may do, until the notice to quit is given and the day specified in the notice has arrived." *Currier* v. *Perley*, 24 N. H. 219, 225. The prescribed notice to put an end to tenancies from year to year was half a year, while, in case of tenancies for shorter periods, the notice was regulated by the letting, as a month's notice for a monthly letting. In all cases, in the absence of special agreement, the notice was required to terminate with the current year or other period of the tenancy. *Currier* v. *Perley, supra,* 224; *Hazeltine* v. *Colburn,* 31 N. H. 466, 470. No apportionment of the rent in respect to time could be made except by agreement. *Perry* v. *Aldrich,* 13 N. H. 343, 347, 350; *Currier* v. *Perley, supra,* 224; *Russell* v. *Fabyan,* 28 N. H. 543, 545; *Quinn* v. *Madigan,* 65 N. H. 8.

The common law as to tenancies at will prevails in this state, except so far as it has been modified by statute. *Currier* v. *Perley, supra,* 223; *Hazeltine* v. *Colburn, supra,* 471; *Nowell* v. *Wentworth,* 58 N. H. 319. Our legislature first dealt with the subject by Laws 1831, *c.* 29, which, as revised and extended in 1842, by R. S., *c.* 209, is still in force. P. L., *c.* 357. The language of the statute so far as here material is: "2. Termination. Any lessor or owner of lands or tenements may at any time determine any lease at will or tenancy at sufferance, by giving to the tenant or occupant a notice in writing to quit the same at a day named therein. 3. Notice to Quit. ... If the rent is payable more frequently than once in three months, whether such rent is due or not, thirty days' notice shall be sufficient, ... 11. Termination by lessee. A lessee may terminate his lease by notice in writing, in the same manner as the lessor, and the notice shall have the same effect for all purposes as a notice by the lessor to the lessee."

The defendants concede the common-law rules, and rest their asserted right to apportion the rent upon their construction of the statute. The contention is that, by the provision permitting the determination of the lease *at any time* upon a day named in the notice, the legislature by implication intended to permit the apportionment of the rent as of that date. It is argued that otherwise there is no point in allowing either party to determine the letting "at any time," because, they assert, no lessor would terminate the letting in mid-period unless he was to receive his rent for the occupied part of the term, and no lessee would determine his tenancy if he could be required to pay rent for the unoccupied portion of the term following the expiration of the notice day. The argument loses sight of the fact, of com-

mon knowledge, that the exigencies of life and business do not always conform to the calendar. It may be assumed that, in the absence of some advantage to him, neither party will seek to interrupt the tenancy during the rent period. But it is easy to conceive of situations in which the advantages of earlier possession by the lessor, or of relief from the responsibility of continued possession by the lessee, as the case may be, would be regarded by the moving party as of far more importance to him than any sacrifice in rental incident to the termination of the tenancy in mid-term. The argument lacks force.

The answer to the defendants' position, however, is to be found in the purpose and scope of the enactment as already declared by this court. The legislation was, in part, the result of the "embarrassing uncertainty," occasioned by decisions in neighboring jurisdictions, as respects the necessity or otherwise of notice in some cases, and as to the length of the notice when required. One purpose of the statute was to relieve the subject from such uncertainties by furnishing "a plain and practicable method of determining tenancies at will," exclusive of "all other modes by notice." *Leavitt* v. *Leavitt*, 47 N. H. 329, 336-339. "The great object," however, was "to provide a speedy remedy for the removal of tenants" holding over without right. *Hazeltine* v. *Colburn, supra,* 471. The statute, so far as here in question, deals solely with the right of either party to a tenancy to *terminate* the relationship of his own motion. The sole changes designed by the statute in the common-law rules in respect thereto were (1) to shorten the length of time required to make a notice to quit effectual, and (2) to permit a written notice to be made to quit on any day therein named instead of upon the pay day of the rent. "In all other particulars, the rules of the common law, in relation to these notices, are still the rules to which we have to refer, in all cases of doubt." *Id.* 471, 472.

In other words, the statute merely gives to either party the right at any time to terminate the tenancy on a day certain by the exclusive method provided. It does not purport to bestow on the moving party an *ex parte* right to otherwise modify the stipulations of the existing contract, among which was a covenant to pay a specific rent for a defined term on a particular day. Or, more specifically, applying the law to the facts in the case in hand, the right of the defendants, sought to be exercised on February 9 to determine their lease as of March 13, did not include the power to change the character of the tenancy from a rental "from month to month" to a tenancy of thirteen days beginning March 1; or to modify their contract, to pay

the rent for the month of March on the first day thereof, to a contract to pay a rental proportionate to the period of actual occupancy.

The common-law rule that rents are not apportionable remains unchanged. Accordingly, a landlord who terminates a tenancy by notice to quit in the midst of a rental period cannot recover rent for the occupied portion thereof. Likewise a tenant cannot avoid his contract to pay rent for the full rent period by notice that he will vacate the premises in mid-term. These holdings were inferentially suggested in *Hazeltine* v. *Colburn, supra,* 471, 472. It was there said: "The notice to quit may be made to quit at any day therein named, instead of the precise termination of a year, quarter, month, &c., though it is still clearly the interest of the landlord that it should terminate with the pay day of the rent, because if he, by his own act, puts an end to the tenancy after the pay day, and in the midst of a year, quarter, &c., it is at least doubtful if he could recover any rent between the last rent day and the expiration of the notice." The idea there expressed as a doubt had already been affirmatively expressed, and extended to a like notice by the lessee, in *Currier* v. *Perley, supra,* 225, where it is said: "It would still be expedient [notwithstanding the statute] that the notice should end with the current year or month, since the lessor could claim no rent for an unexpired year or month, when he had put an end to the lease by his own act; and the tenant, for the same reason, could not relieve himself of the rent for the whole year or month by electing to leave a few days before it expired." The *judicial dicta* of these cases is here made authoritative.

The plaintiff's exception to the referee's ruling that the defendants were not liable for rent beyond the first thirteen days of March, and *per* consequence her exception to the referee's finding and to the court's order of judgment on his report, are sustained.

As the conclusion here reached is determinative of the rights of the parties, and is unaffected by any want of sufficiency in the notice the latter issue has not been considered.

*Exceptions sustained.*

Branch, J., did not sit: the others concurred.